GRIFFITH (BLANDY v.). See Cases Nos. 1,529 and 1,530.

---

## Case No. 5,821.

### GRIFFITH v. BRADSHAW et al.

[4 Wash. C. C. 171.] [1]

Circuit Court, E. D. Pennsylvania. Oct. Term, 1821.

SURVEY — PRIORITY OF SETTLEMENT RIGHT—OUTSTANDING TITLE—FIFTEEN YEARS' POSSESSION IN PENNSYLVANIA.

1. A survey returned and accepted is, prima facie, presumed to have been legally made, and it is for him who says it was not, to prove the fact. In a survey of adjoining tracts returned and accepted, it is not necessary to produce the original, or copies of the surveys and connected plots, unless so far as they may be necessary to identify the land.
[Cited in Collins v. Barclay, 7 Pa. /St. 69.]

2. Where a man sets up a settlement right against another settlement right, or against a warrant and survey, he must prove his settlement to be prior to the opposing right, and continuing; or he must content himself with the right of some prior settler, by deducing a title from him down to himself.

3. If the defendant sets up an outstanding title in a third person, he must show it to be a legal subsisting title, and better than the plaintiff's.

4. What laches in a settler will postpone him to a warrant and survey.

5. What is a sufficient survey of a number of tracts adjoining each other, belonging to the same person? Each tract need not be run on the land.

6. Fifteen years' possession under the act of the assembly of Pennsylvania of 1785 to bar ejectment, is only where the possession had commenced when the law was passed.
[Cited in Billon v. Larimore, 37 Mo. 384.]

The plaintiff [Mary Griffith's lessee] claimed under a patent dated in 1801, and to prove the location of the particular land in dispute, she produced the original survey in the name of Robert Glenn, and of the adjoining tracts, dated in 1774, together with the original connected plat of those tracts. She also proved, by the surveyor, who, under an order of this court, retraced the lines of this survey, and of the adjoining tracts, that he found two of the corner trees of the tract surveyed in the name of Richard Bache, which this tract calls to adjoin on the upper side, but that no other of the lines and corners of this, or of the tract surveyed in the name of Joshua Shea, which it calls to adjoin on the lower side, were found. He stated, however, that with the original surveys, and the connected plat in his hands, he found no difficulty in laying down John Shea, the lines of whose survey are all marked; Walter Shea, lying between that tract and the tract in question, and Richard Bache, as well as the land in question. The defendants set up no title whatever, but length of possession. They also insisted, (1) that the land in question was not actually surveyed and marked on the ground; and (2) that the conveyance to the lessor of the plaintiff by J. B. Wallace, in whom the title was regularly vested, was merely colourable, to give jurisdiction to this court; it having been proved by a witness, that when he called to serve a notice on Mrs. Griffith, she stated that she knew nothing of this land, or that she had a title to any lands in the county of Bradford, where these lands were said in the notice to lie. To meet this evidence, it was proved by the attorney at law of Mrs. Griffith, that he was verbally authorized by her to make arrangements, with W. G. in respect to a large debt due by him, and for which J. B. Wallace was in some way bound; and that for the better securing of the said debt, he, as the attorney of Mrs. Griffith, took the deed in question, which, though absolute in form, was intended to operate as a mortgage. That he communicated what he had done to his client, and received her approbation.

Wallace & Peters, for plaintiff.
Mr. Baldwin, for defendants.

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

WASHINGTON, Circuit Justice (charging jury). The plaintiff appears before the court with a paper title apparently unexceptionable. The patent bears date in 1801, and recites a survey of the land in dispute, made and returned in 1774. The defendants assert no title whatever, but rely upon certain alleged defects in the plaintiff's title, and upon length of possession in themselves. The first alleged objection to the plaintiff's title is, that the land said to have been surveyed in 1774, in the name of Robert Glenn, never was in reality surveyed and marked on the ground, because the surveyor, J. Bennet, who was directed by the order of this court to retrace and examine the lines of this and the adjoining tracts, could discover but two marked trees on the line which divides this from the tract of ·Richard Bache. This objection may at once be disposed of, by applying it to two or three general principles of law, which have so frequently been laid down, and so constantly adhered to by this court and the courts of this state, as to have become great land marks of property.

The first is, that the owner of a warrant which has been surveyed, and the survey returned into the land office, and there accepted; and especially where the title has been consummated by a patent, need not, when called upon to· assert his right, produce further evidence than the return and acceptance of the survey, or the patent, where a patent has issued. That the surveyor, a public officer, acting under the sanction of his oath, has made the survey in a legal manner, is to be taken as a fact, unless the contrary be proven; and the burthen of this proof lies upon the person who questions the legality of the survey. It is. often necessary for the party claiming under the survey to prove the identity of the location, so as to show that the possession of the defendant interferes with it; and on this account, it may become necessary to produce the original survey, and frequently to have the lines retraced: but if, on this examination, the identity of the land is established, either by its own marks or those of adjoining tracts, this is sufficient; and if the defendant goes farther, and denies that an actual survey was ever made, he must prove that fact, as before observed, to the entire satisfaction of the jury.

Another rule is, that where there is a series of warrants taken out by the same person adjoining each other, and commencing with a leader, it is a sufficient survey if the exterior lines are run and marked on the ground, and corners marked on the interior lines sufficient to enable the surveyor to protract the lines of the different tracts, without actually running them on the ground. In this case the defendants, assuming the labour which the law imposes upon them of satisfying you that this tract was not surveyed, rely upon the evidence of the surveyor who retraced the lines of these surveys under the order of this court, that no marked trees were found on the line which divides this land from the tract surveyed in the name of Walter Shea, which it calls to adjoin on the south-west, nor any on the north-west and south-east lines. But the location of Joshua Shea's tract is proved by the marked lines and corners of John Shea's land, which it calls to adjoin on the south-west, and the two corner trees of Richard Bache's survey, which this tract, in the name of Robert Glenn, calls to adjoin on the north-east, viz. the maple and the white oak. fixes with sufficient certainty the location of this survey. By beginning at the maple, and running the line of Richard Bache the number of poles mentioned in the survey, it necessarily runs eighty. nine perches beyond Bache's line, into land then vacant, as mentioned in the survey; thence the surveyor had only to run the course and distance to the line of Joshua Shea, thence along his line the given distance, and thence to the beginning, which would be the closing line. The surveyor has further stated, that with the original survey and connected plat in his hands, he found very little difficulty in running the lines of the tract in question. Upon this evidence, it is for you to decide whether the defendants have supported this objection.

2. The next objection to the plaintiff's title is, that the deed from Wallace to the lessor of the plaintiff was not made with her privity, but was intended to give jurisdiction to this court. The explanation of this transaction given by the attorney for Mrs. Griffith is, that he was employed by her to make arrangements with a gentleman who was her debtor, for the security of that debt, and that he took from Mr. Wallace, who was in some way responsible for the debt, a deed for the land in controversy; that he communicated to his client from time to time the measures which he had adopted, of which she approved. The deed is absolute in form, and conveys the legal estate to the lessor of the plaintiff, and the only question is, whether it was bona fide or not, as to which you must judge.

3. The last question is, whether the plaintiff is barred by length of possession? This suit was brought in April, 1817, and it is incumbent on the defendants to satisfy you that they have had an uninterrupted adverse possession for twenty-one years preceding that period. The defendants do not pretend to assert even a colour of title to the lands in their possession, and it is therefore necessary for them to prove, not only that their possession has been adverse, but that it has been continuing. As to the argument that possession for fifteen years is sufficient to bar the plaintiff, whose title accrued prior to the act of 1785. there is nothing in it. The section in that law, as to fifteen years' possession, is confined to an adverse possession existing at that time; whereas it is not pretended that the possession of these defendants comemnced as early as 1785.

The jury found a verdict for the plaintiff.